PER CURIAM.
This bar disciplinary proceeding is before us upon the complaint of The Florida Bar and the referee’s report and recommendation. We have jurisdiction. Art. V, § 15, Fla. Const.
The referee made the following findings of fact:
1. Respondent is, and at all times mentioned herein was, subject to the jurisdiction of The Supreme Court of Florida.
2. In or about August, 1985, Respondent drafted a Will for Walter Klugge.
3. Respondent was named a beneficiary in the Will. Respondent’s sister was also named a beneficiary in the Will.
*1180 4. Mr. Klugge died on or about April 26, 1986.
5. Pursuant to the Last Will and Testament of Mr. Klugge, Respondent took possession of a Concorde wristwatch valued at $2500.00, a gold coin valued at $500.00, a gold ring valued at $900.00 and a pen and pencil set valued at $100.00.
6. A major asset of the estate was a warehouse in Sarasota.
7. In or about April, 1989, Respondent negotiated a sale of the warehouse. Respondent paid himself a $15,000.00 fee from the proceeds of the sale of this property. Respondent had previously taken a fee of $5,000.00. Respondent did not petition the court for any portion of the $20,000.00 in fees.
8. On or about February 6, 1990, The Florida Bar initiated an audit of Respondent’s trust account records. The audit covered the period from October, 1987 through February, 1990.
9. The examination of Respondent’s trust account revealed the following:
a) Funds belonging to Sarasota Warehouse, Highland Apartments, and Thomas-Blough-Fogarty were handled through Respondent’s trust account. Respondent informed The Florida Bar that these were business ventures which he managed and/or in which he had an ownership interest, and constitutes commingling.
b) A shortage existed in Respondent’s trust account which indicated a use of clients’ funds for purposes other than the specific purpose for which they were entrusted to Respondent.
c) A cash receipts and disbursements journal was not available for inspection.
d) Ledger cards were not available for inspection.
e) Monthly comparisons and annual listings were not available for inspection.
f)The bank had not been authorized to notify The Florida Bar in the event that any trust check was returned due to insufficient funds or uncollected funds, absent bank error.
10.Respondent was not in compliance with the minimum trust accounting requirements regulating The Florida Bar.
The referee recommended finding the following ethical violations for conduct before January 1, 1987: former Rules of Professional Responsibility Disciplinary Rule 5-101(A) (lawyer shall not accept employment if the exercise of his professional judgment will be or reasonably may be affected by his own financial, business, property or personal interests); Disciplinary Rule 6-101(A) (lawyer shall not handle a legal matter he knows or should know that he is not competent to handle); Disciplinary Rule 6-101(A)(2) (lawyer shall not handle a legal matter without preparation adequate in the circumstances); Disciplinary Rule 6-101(A)(3) (lawyer shall not neglect a legal matter); Disciplinary Rule 9-102(A) (commingling); former Integration Rule, article XI, rule 11.02(4) (use of clients’ funds for purposes other than the specific purposes for which they were entrusted to the lawyer); former Bylaws sections 11.02(4)(c)2.e. (cash receipts and disbursements journal not available for inspection), 11.02(4)(c)2.f (ledger cards not available for inspection), 11.02(4)(c)3.a(ii) and (4)(c)3.b (monthly comparisons and annual listings not available for inspection), and 11.02(4)(c)3.d (bank not authorized to notify bar if trust check returned for insufficient funds or uncollected funds).[1] The referee recommended a six-month suspension.
Rule contests only the recommended discipline. He asks the Court to impose no more than a ninety-day suspension in light of the presence of several mitigating factors. The referee found in mitigation that Rule has no prior disciplinary record; he made full and free disclosure to the disciplinary board and exhibited a coopera *1181 tive attitude; and he showed remorse for his actions. In addition, Rule points out that the violations were not intentional and that he had been admitted to practice for only approximately three and one-half years at the time he drafted the will and had little experience in the field.
We have imposed a lesser discipline in cases involving conflicts of interest in the drafting of wills. See, e.g., The Fla. Bar v. Miller, 555 So.2d 854 (Fla.1990) (public reprimand and one-year probation for attorney who drafted will naming himself as contingent beneficiary and failed to advise his client to seek independent counsel); The Fla. Bar v. Jameison, 426 So.2d 16 (Fla.1983) (ninety-day suspension and one-year probation for attorney who, without advising client to seek independent counsel, solicited client to fund $20,000 for foundation which attorney sought to establish for his personal goals). However, because this case involves trust fund violations, albeit unintentional, in addition to the conflict of interest, we find that stricter punishment is warranted. See Fla. Bar v. Weiss, 586 So.2d 1051 (Fla.1991) (six months’ suspension for trust fund violations involving gross negligence).
Accordingly, we approve the referee’s findings and impose a ninety-one-day suspension.[2] The suspension shall become effective on June 29, 1992, thereby giving Rule time to take the necessary steps to wind up his affairs and protect his clients’ interests. Rule shall provide notice to his clients of his suspension and shall accept no new business from the date of this opinion. Judgment for costs in the amount of $4,897.19 is entered against Rule, for which sum let execution issue.
It is so ordered.
SHAW, C.J., and OVERTON, McDonald, barkett, grimes, KOGAN and HARDING, JJ., concur.

. For conduct occurring after January 1, 1987 the referee found the following violations: Rules Regulating The Florida Bar 4-1.1 (lawyer shall provide competent representation), and 4-1.15(a), 5-1.1, 5-1.2(b)(5), 5-1.2(c)(l)b. and (c)(2), and 5-1.2(c)(4) (trust fund violations).

. While the suspension we impose is only one day in excess of that conceded by Rule, the extra day is significant. Any suspension in excess of ninety days causes inevitable delay in reinstatement because proof of rehabilitation is required. R.Regulating Fla.Bar 3-5.1(e).